[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff Shirley E. McGrath commenced this action claiming a dissolution of her marriage to the defendant John McGrath, and equitable distribution of the parties property, both real and personal, temporary and permanent alimony, counsel fees and restoration of her former name, together with such other relief as the court deemed fair and equitable.
The defendant John McGrath filed an answer and cross complaint and in his cross complaint he sought a dissolution of the marriage, return of personal property, and equitable division of real and personal property and further relief as the court might provide in law or equity.
The trial of this matter was held on November 19 and November 20, 1996 and the court finds the following facts as proved
(1) The plaintiff and the defendant intermarried on February 18, 1982, in Sprague, Connecticut.
(2) The wife's former name was Shirley Ethel Griffin.
(3) The plaintiff has resided continuously in the state of Connecticut for at least one year next proceeding the date of the filing of her complaint. CT Page 7250
(4) The marriage between the parties has broken down irretrievably.
(5) There are no minor children issue of this marriage.
(6) No other minor children have been born to the plaintiff wife since the date of the marriage of the parties.
(7) The cause of the breakdown was the result of two factors. One was the defendant's work. He being a union member who worked out of the Bridgeport Union Hiring Hall and it required him to work a great deal of the time in Fairfield County or New York and when he was working in this manner he was away from the home from Monday through Friday. The second was the drinking on the part of the defendant husband. The evidence indicates that he was a very heavy drinker and was intoxicated day after day on many occasions. The evidence also indicates that on at least one occasion he was physically violent toward the plaintiff wife ripping her clothes off and choking her. Based on a review of all of the testimony of both parties, the court finds that the cause of the breakdown was the defendant husband's conduct, specifically the excessive drinking.
(8) The plaintiff is 47 years old and has been employed since she was a young girl. She has worked at a number of occupations such as waitress, receptionist, armed guard at Millstone, and has been a bus driver the past nine years. She earns a gross weekly pay of $301.00 per week and a net pay of $241.00. The defendant is 52 years old and except for several years that he spent in the military service he has been a sheetmetal worker all of his life. He earns anywhere from $10 to $20 per hour depending on the type of job that is involved. He had earnings in 1992 of $40,800.00. He is presently unemployed and has been unemployed for some time now. The evidence indicates that when the defendant husband is unemployed aside from a few chores around the house, he spends a great deal of his time drinking. He attributes his unemployment due to the economic conditions but the court finds that his extended unemployment is due more to the fact that his stepdaughter, age 28, who has lived with he and his wife since the date of the marriage received a settlement of $250,000.00 in 1992. In addition, the defendant husband received an inheritance from his family consisting of real estate which was sold several years ago and he received a net after taxes of $43,000.00 from the CT Page 7251 sale of the property he inherited in Danbury, Connecticut. Although this family presently is living in relatively modest circumstances, the evidence has indicated that between the stepdaughter's award for personal injuries, the husband's inheritance, the husband and wife's earnings; this family unit of three have spent somewhere between $300,000.00 to $400,000.00 since 1992.
(9) The plaintiff has the following assets: an undivided 1/2 interest in the marital residence at 74 Riverside Drive, Versailles, Connecticut. This property was purchased in 1984 at a cost of $42,000.00 and the defendant husband put down a $15,000.00 down payment. When the stepdaughter received her injury settlement, she paid off the remaining balance on the mortgage of approximately $25,000.00 so that the property is free and clear. Despite claims made in lawsuits by the stepdaughter for repayment of this $25,000.00 and other monies, the stepdaughter Faith Griffin specifically testified at the trial that she paid off the mortgage and never asked her mother or stepfather for a note and never expected them to repay this money. She said that she felt that they had taken care of her and had allowed her to live there and it was a contribution on her part, which at the time represented only 10 of her settlement. The plaintiff also has two motor vehicles valued at approximately $4,500.00 and some jewelry and collectibles also valued at approximately $4,500.00.
(10) The defendant husband has the following assets. An undivided 1/2 interest in the marital residence at 74 Riverside Drive, Versailles, more fully described above. The residence was appraised at $112,000.00 by an expert witness and there was evidence that the town had appraised it at $86,280.00. The court finds the value of the residence to be $100,000.00. In addition, the plaintiff husband has two motor vehicles valued at approximately $11,000.00, $19,300.00 in his savings and checking accounts in Florida, and a parcel of land which he owned prior to the marriage in Okeechobee, Florida, upon which he installed a mobile home in the recent past and which has an equity of approximately $20,000.00, various personal property consisting primarily of tools, metal inventory and equipment valued at $7,625.00, and lastly he has a sheetmetal worker's Local 38 annuity valued at $37,132.00 and a pension present value of $28,722.00. A considerable amount of the pension however accrued prior to the marriage and according to an expert witness in defendant's Exhibit 2, the accrued monthly benefit CT Page 7252 due when the defendant husband reaches the age of 62 for the period covered by the marriage, would be $412.10 per month.
After reviewing all of the facts found, the evidence presented and the statutory criteria as set forth in Connecticut General Statutes §§ 46b-81 and 46b-82, the court enters the following orders:
(A) The marriage is dissolved.
(B) The marital residence consisting of the real estate at 74 Riverside Drive, Versailles, Connecticut shall be the sole and exclusive property of the plaintiff. However, the plaintiff shall hold harmless the defendant from and against any and all claims by Faith Griffin for any debt due from the defendant.
(C) The vehicles belonging to the plaintiff shall remain her property.
(D) The plaintiff shall be entitled to $206.05 per month of the defendant's pension and the defendant is ordered to execute the necessary QDRO documents to effectuate this. (This represents 50% of the pension accrued during the course of the marriage. See defendant's Exhibit 2.)
(E) The defendant shall retain as his sole property the land and mobile home in Okeechobee, Florida, the $19,000 savings and checking accounts at the Sun Bank in Florida and remainder of his pension and annuity.
(F) Defendant husband is ordered to keep in full for and effect the three Prudential life insurance policies totalling $40,000.00 listed on his financial affidavit and is not to make any more loans against said policies and shall keep them fully paid up until he reaches the age of 61 years. It is the court's intention that this life insurance be a guarantee and security for the plaintiff wife in view of the fact that no alimony award is being made.
(G) Neither party is awarded any alimony under this judgment.
(H) Plaintiff wife is ordered to return to the defendant husband all of the plumbing equipment and inventory CT Page 7253 listed on defendant's Exhibit 7 consisting of two pages. In the event the plaintiff wife fails to return any of the tools and equipment listed on Exhibit A, she shall pay to the defendant the sum of $3,812.00, said sum to be payable at the rate of $100.00 per month beginning February 1, 1997. In the event the plaintiff wife is able to return a portion of the tools and equipment, the parties shall agree upon the value of the tools and equipment returned and subtract that sum from the $3,812.00 described above. If the parties are unable to agree upon the amount and value of the tools and equipment returned to the defendant, they shall arbitrate the matter and both parties shall agree on a neutral arbitrator who shall set a value for the tools and equipment that are returned and that sum, which the arbitrator decides, shall be deducted from the $3,812.00 unless of course it exceeds the $3,812.00, in which case the plaintiff would have no further obligation to the defendant.
(I) The court shall retain jurisdiction over this matter so that the transfers and payments due from one party to another can be monitored and enforced.
(J) The court makes no award for counsel fees for either party.
(K) The plaintiff shall be responsible for payment of the balance due on the Sears credit card and each party shall be responsible for the other debts listed on his or her financial affidavit.
R. T. O'Connell, J.